OPINION
{¶ 1} In this consolidated appeal, defendant, Sheldon O. Pierce, appeals from two judgments of the Franklin County Court of Common Pleas. In appellate case No. 02AP-1133, Pierce appeals from a judgment finding him guilty of aggravated robbery with specifications, two counts of robbery with specification, and one count of having a weapon under disability. In appellate case No. 02AP-1134, Pierce appeals from a judgment finding him guilty of four counts of robbery, two of which were felonies of the second degree and two of which were felonies of the third degree.
 {¶ 2} According to the state's evidence, Pierce was involved in two criminal incidents. On February 9, 2001, Jennifer Owens received a federal income tax return check. She cashed the check during her workday at Financial Healthcare. Owens placed one-half of the cash in her purse and one-half of the cash in a front pocket in her cargo pants. She finished her work at Financial Healthcare at approximately 4:30 p.m. and left the building. Owens walked to a parking lot where she had parked her car earlier that day. As she was approaching the back of her car, she observed Pierce coming out of the bushes near her car. Owens was concerned for her safety so she quickly entered her car and used her automatic locks to secure all four doors of her car. Pierce approached the driver-side window of Owens' car. He brandished a gun. According to Owens, Pierce pointed the gun toward her such that if the gun had discharged, Owens would have been struck in the leg. (Tr. Vol. III, 139.)
 {¶ 3} Pierce shouted at Owens to open the door and give him her money. Karen Wingler, a former co-worker of Owens, observed the situation. Wingler got out of her car and moved toward Pierce. Pierce was startled and ran away. The Columbus Police Department was contacted and investigated the crime scene.
 {¶ 4} On February 14, 2001, Kathy Cornell, who suffers from a neuromuscular disorder, was cashing her disability check at Checksmart. As she departed Checksmart, Pierce knocked her to the ground and took most of her money. Patricia Schwiebert, who was waiting in a car outside of Checksmart for Cornell, observed Cornell being attacked. Schwiebert attempted to defend her friend. Pierce slammed Schwiebert to the sidewalk. Schwiebert was cut on her forehead and required nine stitches to close the cut; she also sustained lasting neurological damage.
 {¶ 5} On December 13, 2001, Pierce was indicted by the Franklin County Grand Jury on four counts of robbery in case No. 01CR-12-7234 (appellate case No. 02AP-1134). On March 5, 2002, Pierce was indicted by the Grand Jury on one count of aggravated robbery, two counts of robbery and one count of having a weapon under disability in case No. 01CR-03-1299 (appellate case No. 02AP-1133).
 {¶ 6} The trial court granted a motion to consolidate case Nos. 01CR-12-7234 and 01CR-03-1299. In case No. 01CR-03-1299, the jury found Pierce guilty of aggravated robbery with specification, a felony of the first degree; one count of robbery with specification, a felony of the second degree; and one count of robbery with specification, a felony of the third degree. The charge of having a weapon while under disability, a felony of the fifth degree, was tried by the court, who found Pierce guilty of this charge. The trial court sentenced Pierce to a ten-year prison term, with an additional three-year prison term to be served consecutively for the gun specification. The trial court also ordered the sentence in case No. 01CR-03-1299 to be served consecutively to the sentence in case No. 01CR-12-7234. In case No. 01CR-12-7234, the jury found Pierce guilty of two counts of robbery, felonies of the second degree, and two counts of robbery, felonies of the third degree. The trial court sentenced defendant to a 16-year prison term.
 {¶ 7} Pierce, through counsel, advances the following four assignments of error:
 {¶ 8} "[1.] The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding appellant guilty of a firearm specification as the verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.
 {¶ 9} "[2.] The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding appellant guilty of aggravated robbery as the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 10} "[3.] The trial court erred and deprived appellant of due process of law as guaranteed by the United States and Ohio Constitutions by finding appellant guilty of aggravated robbery as the state failed to prove proper venue beyond a reasonable doubt.
 {¶ 11} "[4.] The trial court erred to the prejudice of the appellant by improperly sentencing him to consecutive terms of actual incarceration in contravention of Ohio's sentencing statutes."
 {¶ 12} Additionally, defendant, pro se, filed a supplemental brief claiming an additional assignment of error, namely that the trial court improperly permitted the victim-witness identification testimony of Jennifer Owens, Patricia Schwiebert, and Kathy Cornell.
 {¶ 13} In his first assignment of error, Pierce argues the verdict of the trial court concerning the firearm specification was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 14} R.C. 2923.11(B) defines firearm as follows:
 {¶ 15} "(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 {¶ 16} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 17} In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Ohio Supreme Court determined that a trier of fact could consider all of the relevant facts and circumstances surrounding a crime to determine a firearm specification. Moreover, in State v. Murphy (1990),49 Ohio St.3d 206, 209, the court noted the state does not have to put forth into evidence a firearm used in a crime to support the guilty verdict on a firearm specification; rather, the state is only required to present evidence beyond a reasonable doubt that a firearm was operable, or the firearm could have readily been operable at the time of the offense, and such proof can be established by the testimony of lay witnesses who were in a position to observe the firearm and the circumstances surrounding the crime.
 {¶ 18} In Thompkins, the Ohio Supreme Court defined the separate concepts of sufficiency of the evidence and manifest weight of the evidence. First, " `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. Sufficiency is basically a test of adequacy.
 {¶ 19} Under a sufficiency standard of review, a reviewing court is required to construe the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 260, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. A jury's verdict "will not be disturbed unless this court finds that reasonable minds could not reach the conclusion reached by the trier or fact." State v. Grinnell (1996), 112 Ohio App.3d 124, 137, discretionary appeals not allowed, 77 Ohio St.3d 1474, 77 Ohio St.3d 1475, citing Jenks, supra.
 {¶ 20} Owens testified she was leaving work at Financial Healthcare at approximately 4:30 p.m. As she was walking toward her car in an adjacent parking lot, Owens observed Pierce "coming up out of the bushes." (Tr. Vol. III, 286.) She was concerned for her safety so she quickly opened her car door and used the automatic car lock to secure all her car doors. Owens testified that as soon as she locked her car doors, Pierce knocked at her window. She looked up and he was trying to open the door. Owens stated that he then pulled out a gun. Owens testified that Pierce said " `[o]pen the door, unlock the door, bitch. Give me your money. I know you have money.' * * * `Shut up, Bitch.' " (Tr. Vol. III, 139.) Owens responded by saying, "[p]lease don't, please don't, please stop." Id. Owens was asked by the prosecutor to explain how Pierce was holding the gun. She testified, "[h]e just had it like-he just had it like up, he was up against my car almost, and he just had it like up like that. I mean, it was pointed right at me, looked like it would hit my leg if it would have gone off." (Tr. Vol. III, 139-140.) She stated that the gun was eye level pointing down toward her leg.
 {¶ 21} In Thompkins, at 384, the Ohio Supreme Court observed, "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Here, Owens' testimony, if believed by the jury, would allow a jury to reasonably conclude Pierce's threats satisfied the state's burden of proving that he had a firearm operable or capable of being readily rendered operable.
 {¶ 22} The Ohio Supreme Court stated in Thompkins, at 383:
 {¶ 23} "* * * Even absent any explicit verbal threats on the part of Thompkins, the trier of fact in this case could have reasonably concluded, based on the totality of the circumstances, that Thompkins was in possession of a firearm at the time of the offense, that is, a deadly weapon capable of expelling projectiles by an explosive or combustible propellant."
 {¶ 24} Owens' testimony demonstrated a vivid description of the actual firearm and the way in which Pierce used the firearm to commit the crime. She testified that the gun was at eye level pointed at close range in the direction of her leg. She observed that the firearm was silver, and she believed that it was a pistol. Owens' actions further suggest that the weapon was "capable of expelling projectiles by an explosive or combustible propellant." Id. She testified that she felt scared; she moved from the driver's seat to the passenger's seat in an effort to move farther away from him. She pleaded with Pierce to "please don't." (Tr. Vol. III, 289.)
 {¶ 25} After Pierce left the crime scene, Owens exited her vehicle. She testified that she remembers saying to a couple of people who asked her what happened that "he had a gun, he had a gun." (Tr. Vol. III, 290.) The testimony presented at trial would provide a jury sufficient evidence to return a guilty verdict.
 {¶ 26} This court, in State v. West (Nov. 23, 1999), Franklin App. No. 98AP-1527, faced a similar set of facts. Alphonso West was charged with two counts of aggravated robbery with a firearm specification, two counts of robbery, one count of aggravated burglary, and one count of burglary. West was found guilty of one count of aggravated robbery with specification and one count of robbery. The victim of the robbery, Patty Brown, testified that the gun "looked like — it was all in the palm of his hand and was — looked black looking." Id. The gun was reported to be pointed somewhere between her chin and chest. This court, after examining the totality of the circumstances, found that Brown's testimony was sufficient to allow a rational trier of fact to find that the firearm was operable. Id. Therefore, Pierce's claim that his firearm specification is not supported by sufficient evidence is unpersuasive.
 {¶ 27} As to manifest weight of the evidence, the Ohio Supreme Court in Thompkins stated that weight of the evidence concerns " `the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " (Emphasis sic.) Id. at 387, quoting from Black's Law Dictionary (6 Ed. 1990) 1594. This court stated in Conley, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." The standard of review for determining whether a conviction is against the manifest weight of the evidence differs from the standard of review applied to determine sufficiency of the evidence. "[T]he evidence is not construed most strongly in favor of the state. Instead, the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Id. In State v. Martin (Apr. 19, 2001), Franklin App. No. 00AP-836, this court stated: "When reviewing the manifest weight of the evidence, an appellate court sits as a thirteenth juror; the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."
 {¶ 28} Pierce's argument is unpersuasive when set against the following testimony. Owens' testimony described the words Pierce used as he stood outside her car door, described how he brandished the gun toward her, described where he pointed the gun, described the color of the gun, and described how she reacted to his use of the gun. Owens testified that after the attack, she told a couple of people that he had a gun. Kathy Wingler testified that Owens was upset and fearful after the attack. The testimony of Owens provides sufficient evidence upon which a reasonable jury could find Pierce guilty of a firearm specification. It is within the province of the jury to decide issues of credibility of testimony in a trial. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Consequently, we find that the greater amount of credible evidence supported Pierce's firearm specification. Pierce's conviction with a firearm specification is not against the manifest weight of the evidence. The first assignment of error is not legally persuasive and is overruled.
 {¶ 29} In his second assignment of error, Pierce argues that the evidence does not support finding him guilty of aggravated robbery because the verdict is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.
 {¶ 30} As discussed above in the first assignment of error, we continue to apply the definitions and standards of review concerning sufficiency and manifest weight of the evidence in our analysis of the second assignment of error.
 {¶ 31} Pierce is charged with violating R.C. 2911.01(A)(1), which states in pertinent part:
 {¶ 32} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 33} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 34} R.C. 2923.11(A) defines a deadly weapon as:
 {¶ 35} "* * * any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 36} In our discussion of the first assignment of error, we stated the evidence was sufficient to allow for a firearm specification, and we continue to hold that position. But in the second assignment of error, Pierce could have used the deadly weapon (firearm) in the way in which it was designed. In State v. Marshall (1978), 61 Ohio App.2d 84,86, this court stated, "[t]he test of a deadly weapon is whether it is capable of inflicting death. The actual use of a weapon doesn't require the same means for which it was designed." A car window with no special modifications to the glass offers relatively reliable protection against the elements of the weather, rocks thrown up by other vehicles while driving on a road, highway noise created by other vehicular traffic, and a host of other situations that a normal driver would face in everyday situations. But a car window with no special modifications offers scant protection against a firearm. The firearm could be used as intended by pulling the trigger to ignite a chemical compound, which would produce an explosion and expel a bullet at a high rate of velocity and could smash through a car window. A person using the mass of a metal object and applying force could smash through a car window and use it as a weapon against the occupant.
 {¶ 37} Owens was aware that her car window offered little protection against a determined robber such as Pierce when the robber is armed with a weapon. At trial, Owens testified that Pierce approached her vehicle, stood at her car's driver-side window, and pointed a gun at her. Owens testified that Pierce demanded money from her. She offered no testimony at trial to doubt that Pierce was using a firearm during the commission of the robbery. The jury observed her demeanor during her testimony, and it was similarly convinced of her truthfulness.
 {¶ 38} Therefore, Pierce's contention that the aggravated robbery conviction was not supported by sufficient evidence and not supported by the manifest weight of the evidence is not persuasive. The second assignment of error is overruled.
 {¶ 39} In his third assignment of error, Pierce argues that the state failed to prove proper venue beyond a reasonable doubt. We disagree.
 {¶ 40} The Ohio Constitution guarantees an accused a speedy trial by an impartial jury in the county in which the offense is alleged to have been committed. Section 10, Article I, Ohio Constitution; State v. Headley (1983), 6 Ohio St.3d 475, 477. The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms as long as it is established by all the facts and circumstances in the case. State v. Dickerson (1907), 77 Ohio St. 34, paragraph one of the syllabus. Venue can be proved by direct evidence but "it is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 29, citing State v. Roberts (Nov. 14, 1985), Franklin App. No. 85AP-520, quoting State v. Gribble (1970), 24 Ohio St.2d 85, paragraph two of the syllabus.
 {¶ 41} This court's review of the entire record directs us to find that the state presented sufficient circumstantial evidence that the location of the crime was within Franklin County, Ohio. Owens testified that she worked at Financial Healthcare located in Victorian Village off of Goodale Boulevard and Neil Avenue and that the crime took place in a parking lot approximately a one-minute walk from her work. (Tr. Vol. III, 285.) Kathy Wingler, Owens' former co-worker, testified that Financial Healthcare was located in Victorian Village on Harrison Street and that the parking lot is located behind the Financial Healthcare building. (Tr. Vol. III, 332, 335.) Robinet Smith, a former co-worker, testified that the offices of Financial Healthcare are located on Neil Avenue and First Street in Victorian Village in Columbus, Ohio. (Tr. Vol. VI, 452.) Three witnesses testified that the crime took place at or near Financial Healthcare in Victorian Village and two witnesses testified that the crime took place within Columbus, Ohio. Pierce did not produce any evidence that contradicted the state's evidence. Therefore, venue was proved beyond a reasonable doubt and Pierce's legal argument is unpersuasive. Pierce's third assignment of error is overruled.
 {¶ 42} In his fourth assignment of error, Pierce argues that the trial court erred by improperly sentencing him to consecutive terms of actual incarceration in contravention of Ohio's sentencing statues. We disagree.
 {¶ 43} An appellate court reviewing the sentences imposed by a trial court considers both the findings set forth in the sentencing entry and the transcript of the sentencing hearing. State v. McCarthy, Belmont App. No. 01 BA 33, 2002-Ohio-5185, at ¶ 7, appeal not allowed,98 Ohio St.3d 1464, 2003-Ohio-734; State v. Monroe (May 8, 2001), Franklin App. No. 00AP-752. "Unless the court is required to impose a mandatory prison term, it is within the court's discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A)." State v. McCullough (July 27, 1999), Franklin App. No. 98AP-988.
 {¶ 44} R.C. 2929.14(E)(4) authorizes a trial court to impose consecutive sentences under selected circumstances. Former R.C.2929.14(E)(4) in effect at the commission of the crimes provided:
 {¶ 45} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 46} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 47} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 48} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 49} The trial court was required under former R.C. 2929.19(B)(2) to "make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * (c) [i]f it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]"
 {¶ 50} R.C. 2929.14(C), which, in its present form, is unchanged from the version that was in effect at the time of Pierce's robbery of Owens that was the subject of case No. 01CR-03-1299, provides, in pertinent part:
 {¶ 51} "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 52} The trial court made its determination of sentencing in case No. 01CR-03-1299 based upon several factors listed in the transcript:
 {¶ 53} "Just a short analysis of the facts from an objective standpoint is that you have picked somebody who's a total stranger, made an armed daylight robbery, presenting grave danger and fear, instilled fear in the victim, and it was planned, I believe. The Court believes you had prior knowledge of the proceeds to be gained from this robbery. Your words to the victim indicated that, that you knew she had the money. It was well planned from that standpoint. It was planned in advance." (Tr. Vol. IV, 663.)
 {¶ 54} The trial court adequately listed its findings and its reasons within the transcript to support the finding for the above sentence in reference to 01CR-03-1299. In case No. 01CR-12-7234, the trial court made its determination based on several factors listed in the transcript:
 {¶ 55} "[T]his Court believes consecutive sentences are warranted in this case because you have consecutive — you have separate victims. It may be all one act, but you have decided to turn your wrath on two separate innocent victims [.] * * * I also find that your record of criminal history shows that consecutive terms are needed to protect the public." (Tr. Vol. IV, 665.)
 {¶ 56} The trial court also listed Pierce's previous convictions to support the consecutive sentence: convicted twice of receiving stolen property, convicted of two counts of armed robbery with a handgun, convicted of a forgery, convicted of carrying a concealed weapon having a weapon under disability, and convicted of trafficking in drugs as a misdemeanor of the first degree. (Tr. Vol. IV, 660.)
 {¶ 57} We find the trial court's explanation in the transcript, taken as a whole, met all the requirements of former R.C 2929.14(E) and former R.C. 2929.19(B)(2). Therefore, the trial court made all the requisite findings and supported the findings with its reasons. Pierce's fourth assignment of error is overruled.
 {¶ 58} In a supplemental brief filed by Pierce, we understand his argument to be that the trial court improperly permitted the victim witness identification testimony of Jennifer Owens, Patricia Schwiebert, and Kathy Cornell. We disagree.
 {¶ 59} In State v. Waddy (1992), 63 Ohio St.3d 424, 438, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89, citing Neil v. Biggers (1972),409 U.S. 188, 93 S.Ct. 375, and Manson v. Brathwaite (1977), 432 U.S. 98,97 S.Ct. 2243, the Ohio Supreme Court stated:
 {¶ 60} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." (Footnote omitted.) Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. State v. Brust (Mar. 28, 2000), Franklin App. No. 99AP-509, dismissed, appeal not allowed, 89 Ohio St.3d 1465, citing State v. Blackwell (1984), 16 Ohio App.3d 100, 103, citing Neil, supra, at 198.
 {¶ 61} The record does not contain any testimony that would lead a court to rule that the photographic array used by detectives to obtain a positive identification of Pierce as the attacker was unnecessarily suggestive. The photographic array shown to Owens consisted of six photocopies of a photographic original with instructions that the subject of the investigation may or may not be included in the photographs. (Tr. Vol. III, 292.) Owens testified that she did not view a single photograph before she viewed the array and she did not see a lineup before viewing the photograph array. (Tr. Vol. III, 293.) Owens testified that Detective Hall did not suggest that she pick any certain photo. Owens picked photograph number 2 of the photographic array, which was a photograph of Pierce, because she remembered his eyes. (Tr. Vol. III, 291, 294.) The testimony given by Owens does not indicate any unnecessary suggestiveness in the identification process and therefore the trial court ruled correctly in not suppressing her identification of Pierce.
 {¶ 62} As to Cornell and Schwiebert, they viewed a photographic array, which also consisted of photocopies of a photographic original. (Tr. Vol. III, 347-348; Tr. Vol. IV, 415-416.) Cornell and Schwiebert were unable to definitely determine their attacker from the photographic array. (Tr. Vol. III, 349; Tr. Vol. IV, 416.) Schwiebert continued to contact Detective Franken to get information concerning their case. (Tr. Vol. III, 352.) Schwiebert and Cornell were told Pierce had been arrested in connection with the attack on them. Schwiebert, of her own volition, contacted the clerk of courts office and was told that Pierce had a scheduled court date. (Tr. Vol. III, 355.) Cornell and Schwiebert came to the courtroom for the hearing. Numerous other cases were also scheduled for hearing at that time, and they did not know when Pierce's case would be called. They had no reason to think Pierce would be first. According to their testimony, at no point during the hearing did they speak with an officer of the court, nor did they hear the name Sheldon Pierce announced during the proceedings. (Tr. Vol. III, 359; Tr. Vol. IV, 417-420.) However, when they observed Pierce being led into the courtroom, they immediately recognized Pierce as the man who attacked them. (Tr. Vol. III, 360; Tr. Vol. IV, 420.)
 {¶ 63} At the outset, we observe Pierce failed to object to the introduction of the identification testimony. Therefore, absent objection, Pierce must prove plain error. State v. Kelly, Franklin App. No. 02AP-195, 2002-Ohio-5797, at ¶ 26, motion for delayed appeal denied, 98 Ohio St.3d 1459, 2003-Ohio-644, reconsideration denied,98 Ohio St.3d 1516, 2003-Ohio-1572. See State v. Peagler (1996),76 Ohio St.3d 496, 499 ("[g]enerally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court").
 {¶ 64} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Nevertheless, even if a defendant satisfies the requirements of Crim.R. 52(B), "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. [The Ohio Supreme Court] has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " State v. Barnes (2002), 94 Ohio St.3d 21, 27, quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. An alleged error is plain error only if, " `but for the error, the outcome of the trial clearly would have been otherwise.' " State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 108, reconsideration denied, 96 Ohio St.3d 1441, 2002-Ohio-3344, certiorari denied, ___ U.S. ___, 123 S.Ct. 533, quoting Long, supra, at 91, paragraph two of the syllabus. Here, even if the testimony were improperly admitted, Pierce fails to demonstrate the outcome of the trial clearly would have been different had the challenged testimony been excluded, given that the attendance of Schwiebert and Cornell at the hearing did not produce an identification that was unreliable under the totality of the circumstances.
 {¶ 65} The reliability of identification is assessed by considering the witness's opportunity to view the defendant at the time of the incident, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the length of time which elapsed between the crime and the identification. Id.
 {¶ 66} In her testimony, Schwiebert testified that she was able to view her attacker's whole body and face as he was coming toward her. She testified that nothing obstructed her view of him. (Tr. Vol. III, 345.) Schwiebert testified at the time of the attack she was "as close as from me sitting in the passenger seat of a car to the front of the car, and then when I actually got out of the car, I mean, I was physically touching him, wrestling with him." (Tr. Vol. III, 344-345.) Schwiebert testified that from the time she first saw the attacker until he ran off, approximately three to five minutes had elapsed. (Tr. Vol. III, 346.) When Schwiebert and Cornell viewed Pierce for the first time they both were certain he was the man who had attacked them. (Tr. Vol. IV, 391.) Given the totality of the circumstances, the trial court did not err in allowing the identification testimony. There is always a certain amount of suggestiveness in every confrontation, but the issue is whether the identification procedures give rise to a substantial likelihood of misidentification. State v. Croomes (June 11, 1991), Franklin App. No. 90AP-1282, cause dismissed, 62 Ohio St.3d 1401. The fifth assignment of error is overruled.
 {¶ 67} For the foregoing reasons, Pierce's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.